**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| In re | |
|---|---|
| LINDA LYNN-WEAVER, | Chapter 13<br>Case No. 06-11544-FJB |
| Debtor | |

**MEMORANDUM OF DECISION**

The debtor, who has completed payments on her confirmed chapter 13 plan and received a discharge, contends that her obligations to fund payments to creditors through the chapter 13 trustee are at an end. The trustee disagrees, arguing that if the debtor prevails on her pending adversary complaint against her mortgagee for damages for violation of the automatic stay, she will be obligated to turn the proceeds over to the trustee for distribution to creditors. By agreement of the parties, the matter has been submitted for adjudication. For the reasons set forth below, the court holds that where payments on the plan have been completed, modification of the plan is no longer possible, and therefore, even if the proceeds would be assets of the estate, there is no mechanism by which the trustee could reach the proceeds for distribution to creditors.

**FACTS AND PROCEDURAL HISTORY**

The facts are not in dispute. On May 24, 2006, Linda Lynn-Weaver ("the Debtor") filed a petition for relief under chapter 13 of the Bankruptcy Code. On December 15, 2006, she filed a chapter 13 plan that required that she make payments to the chapter 13 trustee ("the Trustee") of $794 per month for 52 months; the plan specified the manner in which these payments would be distributed by the Trustee to creditors. Unsecured creditors would receive a distribution of 28 percent of their claims. By order of July 9, 2007 and without objection, the court confirmed this plan. On July 16, 2009, the Debtor moved to modify the confirmed plan, and, on October 30, 2009 and again without objection, the court

confirmed the plan as so modified.  As detailed in the order of October 30, 2009, the plan was thereby modified to decrease the term from 52 months to 44 and to reduce the Debtor's monthly payment from $794 to $748.  Unsecured creditors would continue to receive a dividend of only 28 percent.  On or around April 23, 2010, the Debtor completed her payments on the confirmed plan as modified.

The Debtor filed her bankruptcy petition to avert the then-pending foreclosure of a mortgage on her home.  Early in the case and despite the automatic stay, the foreclosing mortgagee, on more than one occasion and without relief from the automatic stay, rescheduled the foreclosure sale from one date to another.  The Debtor believed these actions to constitute violations of the automatic stay.  Accordingly, on September 20, 2006, the Debtor commenced an adversary proceeding against the mortgagee, its counsel, and its auctioneer (collectively, "the Mortgagee") for compensatory and punitive damages under 11 U.S.C. § 362(k) ("the Adversary Proceeding").  On a motion for partial summary judgment filed in the Adversary Proceeding, the court has ruled that the actions in question were violations of the automatic stay.  The Mortgagee twice sought interlocutory appellate review of the decision on summary judgment, but leave to appeal on an interlocutory basis was denied.  The adversary proceeding remains pending; a trial will be necessary to quantify damages.  The judgment will almost certainly be the subject of an appeal.

On April 21, 2010, the Debtor filed a motion for entry of discharge.  The Chapter 13 trustee objected, arguing (without elaboration) that entry of discharge was premature because the Adversary Proceeding was still pending.[1]  The Debtor replied that the pendency of the Adversary Proceeding was not cause to delay entry of discharge.  The Debtor had completed the statutory requirements for entry of discharge.  Under 11 U.S.C. § 1328(a), she argued, the court was therefore obligated to enter a

---

[1] In her Opposition to the Motion for Entry of Discharge, which she filed on April 22, 2010, the Trustee added as a second basis for objection that "the Debtor still owes the sum of $54.13 in order to complete the plan and fully pay all allowed claims in accordance with the provisions of the confirmed plan."  It is undisputed that this balance was paid on April 23, 2010.

2

discharge "as soon as practicable after completion by the debtor of all payments under the plan," and the pendency of the adversary proceeding was not cause to do otherwise.

At a hearing on the motion, the Trustee elaborated upon her position. Citing 11 U.S.C. § 1306 and *In re Chung Chan*, Civil Action No. 09-CV-10926, 2009 U.S. Dist. LEXIS 106857 (D. Mass. November 17, 2009), she argued that the cause of action that is the subject of the Adversary Proceeding is property of the bankruptcy estate, not of the Debtor, that any recovery in the Adversary Proceeding should therefore inure to the benefit of creditors and be made available for distribution to them through the Trustee, and that entry of discharge should not occur because, by operation of a local rule of this court, entry of discharge would trigger the divestment of the asset from the estate and vest it in the Debtor. The Debtor responded with further arguments: that the claim at issue in the Adversary Proceeding does not belong to the estate; that even if it does belong to the estate, nothing in the Bankruptcy Code or the confirmed plan requires that it be distributed to creditors; and that, as plan payments have been completed, it is too late to modify the plan to so provide.

The hearing resulted in entry of an agreed order pursuant to which (i) discharge would and did enter forthwith and (ii) "notwithstanding the language in the Order Confirming Chapter 13 Plan that all property of the estate as defined in 11 U.S.C. § 1306 shall vest(s) in the Debtor only upon discharge, the court shall decide whether the proceeds (if any) from litigation in Adversary Proceeding No. 06-1364 were or are property of the estate and, if so, whether and when they vest in the Debtor."[2] The order provided that the parties would submit briefs on the issue of "whether the proceeds (if any) from litigation in Adversary Proceeding No. 09-1364 are property of the Debtor's bankruptcy estate and available for payment to creditors in this case notwithstanding the discharge" and that this court would

---

[2] Agreed Order Regarding Motion for Entry of Discharge, entered June 3, 2010.

render a decision on the issues raised in the briefs, "said decision to be binding on the Debtor and the Chapter 13 Trustee, subject to the right of any party to appeal from that decision."[3]

The parties have briefed the issue at length. The Debtor advances the following arguments. First, damages for violation of the automatic stay under 11 U.S.C. § 362(k) can never be assets of a chapter 13 estate. Second, even if such damages are assets of the estate, the trustee and creditors have no right to them because they are entitled to only such assets as a debtor is obligated by a confirmed plan to pay to them, but the Debtor's confirmed plan does not so provide, it cannot so provide except by modification, and the plan may no longer be modified because (i) 11 U.S.C. § 1329(a) permits modification only before payments on the plan have been completed but the Debtor's payments on her plan have been completed and (ii) the cause of action at issue here was known to the trustee when the present plan was confirmed, and therefore the order confirming that plan precludes the Trustee from now arguing that its terms are inappropriate. Third, even if the damages belong to the estate and modification is neither time-barred nor precluded by res judicata, the damages should not alter the Debtor's liquidation analysis and therefore are not cause for modification. Fourth, the income tax consequences of the Trustee's position are unfair to the Debtor. Fifth, the Trustee's position is bad public policy, because it strips from the debtor any incentive to seek redress for violations of the stay, permitting violators to proceed with impunity.

In response, the Trustee counters each of these arguments and raises one new issue, arguing that the issue before the court—whether the proceeds of the Debtor's postpetition claim for violation of the automatic stay must be turned over to the Trustee for distribution to creditors—is not constitutionally ripe for adjudication, there being as yet no judgment in the adversary proceeding and therefore no asset in controversy. The Debtor responds that the issue is ripe, first because the court has

---

[3] *Id*.

already made a determination of liability, with only the extent of damages remaining to be determined, and second because, regardless of whether the Debtor eventually prevails, she presently has the underlying cause of action, a real asset presently in controversy, and her interest in prosecuting that cause of action is highly dependent on the resolution of this controversy.

**DISCUSSION**

    a. **Ripeness**

The Trustee contends that the issue before the Court—whether the Debtor is obligated to turn damages she may recover in the adversary proceeding over to the Trustee for distribution to creditors—is not sufficiently ripe for adjudication.  Ripeness is in part a constitutional requirement for subject matter jurisdiction and in part a prudential consideration.  The ripeness criterion asks whether there presently exists an actual controversy of immediate and real consequence or merely circumstances that, on the basis of events yet to occur, may or may not ripen into a real matter in contest.  "Determining ripeness involves a dual inquiry:  evaluation of 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Misenor v. Maine Medical Center*, 319 F.3d 63 (1st Cir. 2003), citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 18 L.Ed.2d 681, 87 S.Ct. 1507 (1967).

The Trustee contends the matter is not sufficiently ripe because the Debtor has not yet obtained a judgment for damages; she may never obtain such a judgment, and unless and until she does, the very existence of a controversy is contingent and speculative.  The Debtor responds that the asset in controversy already exists:  it is her claim against the Mortgagee for damages.  The existence of this asset has already been the cause of the Trustee's objection to entry of her discharge.  And the Trustee's assertion of a claim to or interest in the asset already creates a problem for the Debtor because she must expend time and money to secure the judgment and damages from the Mortgagee, but if her

5

recovery must be turned over to the Trustee for distribution to creditors, then she will have no incentive, and possibly disincentives, to prosecute that claim.

The Debtor has the better of this argument. The asset in question does already exist as a cause of action; the Trustee herself made this clear by her objection to entry of discharge. It may turn out to have no value, either by entry of a judgment of no liability, an inability to collect damages, or simple nonprosecution. In any one of those events, the issue would *become* moot. But it is not *now* moot. The cause of action exists and is being prosecuted. In view of the summary judgment as to liability, the cause of action is at least reasonably likely to result in a judgment for the Debtor in some amount, albeit subject to likely appeal. The Debtor must now decide whether it is worth her while to continue to prosecute the action, a significant commitment of time and resources. And the Court must now decide whether the Trustee should now file her final account, as she would normally do upon completion of plan payments.[4] In addition, the Court need not at this juncture decide every issue that the parties have briefed. As it happens, the Court is convinced that the parties' rights are settled by virtue of an event that has already occurred: the Debtor's completion of her payments under the plan. The disposition of this matter therefore does not rest on contingencies and is fit for judicial decision. In summary, the issue presented is real and already in existence, it is fit for judicial determination, and withholding a determination at this time would impose a hardship on the Debtor. The issue presented is therefore sufficiently ripe for decision.

---

[4] MLBR App.1, Rule 13-21 ("When the chapter 13 trustee determines that the plan has been completed or the Court otherwise orders, the trustee shall file and serve a final report and account[.]").

**b. Plan Amendment**

The Debtor argues that even if the damages are assets of the estate, the Trustee and creditors have no right to them for the following reasons: (i) a chapter 13 trustee is entitled to only such assets as a debtor is obligated by a confirmed plan to pay or give to the trustee, but (ii) the confirmed plan does not provide for contribution of the damages to fund the plan, (iii) the plan cannot so provide except by modification, and (iv) the plan may no longer be modified because 11 U.S.C. § 1329(a) permits modification only before payments on the plan have been completed, but the Debtor's payments on her plan have been completed. The Trustee responds as follows:

> The Trustee further disagrees with the Debtor's argument that the Trustee must move to modify the plan in order to recover the damages. 11 U.S.C. §350(a) provides that after an estate is *fully administered* (emphasis added) and the court has discharged the trustee, the court shall close the case. While the Debtor has been discharged in this case, the case has not been closed by the Court, and the Trustee can continue to administer the estate and any post-petition assets without having to move the Court to modify the plan. Further, even if the case was closed by the Court, 11 U.S.C. §350(b) provides that a case may be reopened to administer assets. The Trustee therefore not only can continue to administer the estate until the case is closed, but can move to reopen the case to administer an asset that may not have been fully administered before the case was closed, without the need for a modification pursuant to 11 U.S.C. §1329.

In short, the Trustee does not deny that the plan may no longer be modified. Rather, she takes the position that by virtue of 11 U.S.C. §350(a), a chapter 13 trustee has authority to administer assets of the estate—liquidate them and distribute their proceeds to creditors—without express authorization as to the assets in question in a confirmed plan.

The court disagrees. As the Debtor argues, a chapter 13 trustee does not have the power of a chapter 7 trustee to collect and reduce to money the property of the estate. Section 1302(b)(1) expressly gives to a chapter 13 trustee many of the enumerated powers and duties of a chapter 7 trustee, but it notably does not extend to the chapter 13 trustee the chapter 7 trustee's power in § 704(a)(1) to "collect and reduce to money the property of the estate." 11 U.S.C. §§ 1302(b)(1) and

7

704(a)(1). In addition, no provision of chapter 13 authorizes a trustee to distribute estate assets except pursuant to a confirmed plan. In chapter 7, the authority for and manner of distribution is expressly set forth in 11 U.S.C. § 726. In chapter 13, distribution of assets by the trustee occurs only through a confirmed plan.

Nor does the confirmation of a plan confer blanket authority on a chapter 13 trustee to reach and distribute estate assets. A plan "*may* . . . provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(b)(8) (emphasis added). This language is expressly permissive, not mandatory. When a plan makes no provision for payment of claims from specific assets, the debtor has no obligation to make them available for distribution. A chapter 13 trustee's authority to distribute assets is limited to those assets a debtor submits to her pursuant to a confirmed plan. 11 U.S.C. § 1322(a)(1) ("The plan shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan[.]") and § 1326(c) ("Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."). Usually, and except when the plan specifically states otherwise, those asset are limited to the "future earnings or other future income" that, under § 1322(a)(1), the plan must and expressly does provides for submission of to the trustee.

Nothing in 11 U.S.C. § 350(a) supplements the enumerated powers of a chapter 13 trustee or expands a chapter 13 trustee's authority to administer the assets of an estate. The Trustee cites no authority for such an expansive reading of that section. Section 350(a) states only: "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." This section does not purport to define what it means for an estate to be fully administered. For that, the court looks to the chapter concerned. As the Debtor argues, a chapter 13 trustee's authority to administer is limited to receiving plan contributions from the debtor and distributing those contributions as specified

8

in the plan. Upon her completion of these tasks, the estate is "fully administered."[5] And even if the estate were not fully administered, she still would be unable to reach and distribute a specific asset without express authorization therefor in a confirmed plan.

The Trustee does not deny that the plan is no longer subject to modification. Section 1329(a) is clear on that point. "At any time after confirmation of the plan *but before the completion of payments under such plan*, the plan may be modified . . . ." 11 U.S.C. § 1329(a) (emphasis added). It is undisputed that the Debtor has completed the payments required by her plan. Therefore, as the Debtor argues, the plan may no longer be modified, and there exist no means by which either the expected damages could be committed to the Trustee for distribution to creditors or the plan could otherwise be modified to require a further contribution to the plan on account of the damages award. A separate order shall enter to that effect and requiring the Trustee to file her final account upon completion of her distribution of the funds the Debtor has paid under the plan.[6]

Date: November 28, 2011                                    _____
                                                            Frank J. Bailey
                                                            United States Bankruptcy Judge

---

[5] *In re Avery*, 272 B.R. 718 (Bankr. E.D. Cal. 2002) ("In a chapter 13 case with a confirmed plan, then, the trustee's primary duties are two-fold: collect the plan payments from the debtor and distribute those payments to creditors in accordance with the confirmed plan. After the completion of the plan, or after the dismissal or conversion of the case, and after the trustee has collected all payments from the debtor and distributed them to creditors in accordance with the plan, the estate has been 'fully administered.'").

[6] In reaching this conclusion, I express no opinion on any of the other numerous issues the parties have briefed, there being no need to do so.

I add one further point. The Debtor's adversary proceeding against the Mortgagee has been known to the Trustee since some three months before the Debtor filed the first plan that was confirmed in this case. The Trustee could have interposed her present objection—that the plan does not channel the anticipated damages through the Trustee to creditors—as a basis for objection to confirmation at that time. (I express no opinion as to whether that objection would have been sustained.) She could have done the same when the Debtor later moved to modify her plan. It is difficult to see how a Trustee's motion to modify the plan to so provide would not be met with a valid defense of *res judicata*. Still, the Debtor does not rely on this defense—she has mentioned it only in passing and without elaboration or development—and therefore I make no judgment on its merits and do not rely on it in this decision.